UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| KEVIN MCDOW, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>DR. ANTONIO Q. NEVAREZ, *et al.*, )<br>      Defendants. )<br>_____ ) | Civil Action No. 2:20cv583 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court pursuant to the Court's statutory obligation under 28 U.S.C. § 1915(e)(2) to screen complaints filed by litigants who are proceeding *in forma pauperis*.[1] For the reasons set forth below, this action will be DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

## I. PLAINTIFF'S INITIAL COMPLAINT

On November 20, 2020, Plaintiff Kevin McDow ("Plaintiff"), appearing *pro se*, submitted an application to proceed *in forma pauperis* ("IFP Application"), along with a proposed Complaint. IFP Appl., ECF No. 1; Proposed Compl., ECF No. 1-1. In an Order to Show Cause dated December 1, 2020, the Court granted Plaintiff's IFP Application and directed the Clerk to file Plaintiff's Complaint. Order Show Cause at 1, ECF No. 2. However, the Court determined that Plaintiff's Complaint "suffer[ed] from defects that must be addressed before this action may proceed." *Id*.

---

[1] As explained herein, 28 U.S.C. § 1915(e)(2) requires the Court to dismiss a case at any time if it determines that "the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

In the "Basis for Jurisdiction" section of his Complaint, Plaintiff checked the box to indicate that this Court could exercise federal question jurisdiction over this action; however, Plaintiff did not identify "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case." Compl. at 3, ECF No. 3. In the "Statement of Claim" section of his Complaint, Plaintiff stated: "I was informed that I would be terminated 8/23/20 from my pain management program because of THC in my urine. The two defendants ignored my false positive claim, d[ue] to the medications [I] was on. Both defendants ignored all communications objecting to this THC false claim." Id. at 4. The body of Plaintiff's Complaint contained no other information regarding the factual or legal bases for this lawsuit. Id. at 1-6. Plaintiff attached several exhibits to his Complaint, in which Plaintiff appeared to claim that his termination from the pain management program violated Plaintiff's rights under the United States Constitution. Exs., ECF Nos. 1-1 and 1-2.

In its December 1, 2020 Order to Show Cause, the Court explained that when a plaintiff is granted authorization to proceed *in forma pauperis*, the Court is obligated, pursuant to 28 U.S.C. § 1915(e)(2), to screen the operative complaint to determine whether it states a claim on which relief may be granted. Order Show Cause at 2 (citing 28 U.S.C. § 1915(e)(2)). The Court further explained that if the operative complaint fails to state a claim for relief that is plausible on its face, the Court is required to dismiss the action. Id. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Upon review, the Court determined that Plaintiff's Complaint, in its current form, failed to state any plausible claim for relief against Defendants. Id. The Court further determined that although the exhibits to Plaintiff's Complaint could shed some additional light on Plaintiff's intended claims, neither the Court nor Defendants should be required to sift through Plaintiff's

exhibits to determine the factual and legal bases for Plaintiff's lawsuit. *Id*. For these reasons, the Court explained that dismissal of this action was warranted under 28 U.S.C. § 1915(e)(2). *Id*. However, in deference to Plaintiff's *pro se* status, the Court chose not to immediately dismiss this action. *Id*. Instead, the Court provided Plaintiff with an opportunity to file an Amended Complaint. *Id*. The Court stated:

> Plaintiff is ORDERED to SHOW CAUSE why this action should not be dismissed by filing an Amended Complaint within thirty days from the date of entry of this Order to Show Cause. Plaintiff is ADVISED that the Amended Complaint will supersede the initial Complaint and will become the operative complaint in this action. As such, the Amended Complaint must:
>
> (i) be clearly labeled as Plaintiff's Amended Complaint;
>
> (ii) clearly identify all Defendants against whom Plaintiff intends to assert claims;
>
> (iii) clearly identify the specific claims asserted against each Defendant; and
>
> (iv) clearly set forth all factual allegations to support each identified claim against each Defendant.
>
> Plaintiff must clearly explain who took what action, when the action occurred, and why the action was wrongful.

*Id*. at 2-3.

## II. PLAINTIFF'S AMENDED COMPLAINT

Plaintiff timely filed an Amended Complaint. Am. Compl., ECF No. 4. In his Amended Complaint, Plaintiff claims that Defendants Dr. Antonio Q. Nevarez ("Dr. Nevarez") and La'Keisa Harris ("Ms. Harris") (collectively "Defendants") (i) violated Plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution; and (ii) violated "their own agency appeal process." *Id*. at 1. To support these claims, Plaintiff alleges that he participated in a pain management program at Eastern Virginia Medical School Physical Medicine and

Rehabilitation.  *Id*. at 2.  Dr. Nevarez served as Plaintiff's doctor, and Ms. Harris served as the practice manager for the program.  *Id*.

Plaintiff alleges that in May 2020, Dr. Nevarez advised Plaintiff that "THC was detected" in a urine test that Plaintiff took in April 2020.  *Id*.  Dr. Nevarez tested Plaintiff's urine again in May 2020, and no THC was detected.  *Id*. at 2-3.  Despite the negative test, Dr. Nevarez advised Plaintiff that in order to "continue in the [pain management] program," Plaintiff would "have to sign a written contract" ("Pain Management Agreement").  *Id*. at 3.  The Pain Management Agreement set forth certain rules regarding "patient responsibility and accountability while participating in opioid therapy."  *Id*. at 8.  Ms. Harris "was put in charge of managing and seeing that [the Pain Management Agreement] was being followed."  *Id*. at 3.  Ms. Harris was also required to inform Dr. Nevarez of Plaintiff's "future test results."  *Id*.

Plaintiff alleges that his test results for the next few weeks "were all okay," and that he received his "normal 120 pill count."  *Id*.  However, on July 22, 2020, Plaintiff's Home Health Aide advised Defendants that "it [had been] three (3) weeks and no medication renewal form had been filled out."  *Id*. at 4.  On July 23, 2020, Ms. Harris sent Plaintiff a "letter of termination," which stated:

> The EVMS Spine Center and EVMS Physical Medicine and Rehabilitation regrets to inform you that we will no longer be able to provide you medical care due to noncompliance with our Opioid (Narcotic) Chronic Pain Management Agreement.  Please note that your termination from our practice is a team decision and your doctor is part of the team.
>
> **Reason for Termination:** Violation of Narcotic Agreement, Inconsistent UDS, after IMP
>
> As you will recall, the opioid treatment agreement filed in your medical record, which you signed[,] sets out clear areas of patient responsibility and accountability while participating in opioid therapy.  The terms of this responsibility and accountability are in accordance with federal and state regulations, which oversee this

> practice and are designed to protect your health. Because of the bre[a]ch of your signed agreement, we can no longer continue to assume responsibility for the medical care of your pain complaints.
>
> As a courtesy to you, we will provide emergency care only ending 30 days after the date of this letter. However, current prescribed medications will not be continued, renewed or other narcotics/opioid given. At the end of those 30 days, telephone calls will not be returned. We define emergency care as care which, if not provide[d] immediately, could reasonably be expected to result in serious jeopardy of your health, or serious functional problems or impairment of body organs or functions.
>
> All office appointments or procedure appointments which have been previously arranged are now cancelled. We will be glad to forward your medical records at no cost to you to the physician of your choice. To do so, however, we require [the] complet[ion] of a written authorization by you for the release of these records. A medical record release form is attached for you to complete and return to us with the appropriate information of the physician you have chosen to receive the records. The records will be sent upon receipt of the authorization.
>
> To facilitate your choice of another pain physician, we have attached a listing of other care providers for management of chronic pain problems. Your insurance carrier may also be able to give you information on other providers.
>
> However, if you feel that you may have [a] substance use problem and need help[,] we recommend that you click on this link (http://findtreatment.samhsa.gov/) to locate a substance use treatment program near you.

*Id*. at 8-9 (emphasis in original). Ms. Harris attached recent test results to her letter, which showed that THC was detected in two of Plaintiff's urine tests. *Id*. at 8, 10, 12.

Plaintiff believes that the results of his urine tests "were ambiguous at best," and "[i]f anything, . . . confirmed that [P]laintiff's medication caused a false positive." *Id*. at 4. Plaintiff claims that Defendants' decision to terminate him from the pain management program violated his equal protection rights under the Fourteenth Amendment. *Id*. at 1, 4. Plaintiff further claims that Defendants failed to respond to his objections to his termination, which "violated their own agency

5

appeal process." *Id*. at 1, 4-5. The Court construes this claim as a breach of contract claim, based on an alleged breach of the terms of the Pain Management Agreement. The Court will address each of Plaintiff's claims in turn.

### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In his Amended Complaint, Plaintiff fails to allege that Defendants treated other similarly situated individuals differently than they treated Plaintiff, or that any alleged unequal treatment was the result of intentional or purposeful discrimination. *See Willoughby v. Virginia*, No. 3:16cv784, 2017 U.S. Dist. LEXIS 153417, at *12 (E.D. Va. Sept. 20, 2018) (dismissing a claim under the Equal Protection Clause of the Fourteenth Amendment pursuant to Federal Rule 12(b)(6) because, among other reasons, the *pro se* plaintiff "identifie[d] no so-called 'comparator'—no individual with whom he [was] similarly situated but who was treated differently"). Accordingly, the Court finds that Plaintiff has not alleged a plausible equal protection claim against Defendants under the Fourteenth Amendment.

### B. Breach of Contract

"The elements of a breach of contract action [in Virginia] are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Here, the Court finds that Plaintiff has not sufficiently identified

the specific obligation(s) that Defendants owed to Plaintiff under the Pain Management Agreement with respect to an appeal of a termination decision. The Court further finds that Plaintiff has not sufficiently explained how Defendants breached any such obligation(s). Accordingly, the Court concludes that Plaintiff has not alleged a plausible breach of contract claim against Defendants.[2]

### III. THE COURT'S SCREENING OBLIGATION UNDER 28 U.S.C. § 1915(e)(2)

As previously explained to Plaintiff, the Court is required to dismiss a case at any time under 28 U.S.C. § 1915(e)(2) if it "determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Because the Court hereby determines that Plaintiff's Amended Complaint, like his initial Complaint, fails to state a claim on which relief may be granted, the Court is obligated to dismiss this action pursuant to 28 U.S.C. § 1915(e)(2).

When a district court dismisses an action pursuant to 28 U.S.C. § 1915(e)(2), and "the district court has already afforded an opportunity to amend," the United States Court of Appeals for the Fourth Circuit has found that "the district court has the discretion to afford another opportunity to amend[,] or [it] can 'dismiss the complaint with prejudice, thereby rendering the dismissal order a final, appealable order.'" *Smith v. Forrester*, No. 4:18cv3317, 2019 U.S. Dist. LEXIS 35042, at *5 (D.S.C. Feb. 6, 2019) (citing *Workman v. Morrison Healthcare*, 724 F. App'x

---

[2] The Court notes that in an attachment to Plaintiff's Amended Complaint, Plaintiff also refers to his "right to confront [his] accuser" under the Sixth Amendment, and his due process rights under the Fourteenth Amendment. Am. Compl. at 15, ECF No. 4. To the extent Plaintiff intended these references to serve as additional claims against Defendants, the Court finds that such claims would not survive the Court's screening under 28 U.S.C. § 1915(e)(2). For example, a Sixth Amendment claim would fail because "[t]he text of the Sixth Amendment makes the right to confrontation applicable only to 'all criminal prosecutions.'" *Keck v. Commonwealth*, No. 3:10cv555, 2011 U.S. Dist. LEXIS 115795, at *60 (E.D. Va. Sept. 9, 2011) (quoting U.S. Const. amend. VI). Further, a Fourteenth Amendment due process claim would fail because Plaintiff has not adequately alleged that he had a protected liberty or property interest that was interfered with by the State, as is necessary to establish such a claim. *See Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 466 (E.D. Va. 2003) (quoting *Barefoot v. City of Wilmington*, 306 F.3d 113, 124 (4th Cir. 2002)) (explaining that to state a due process claim under the Fourteenth Amendment, a plaintiff must demonstrate, among other things, that "there exists a liberty or property interest which has been interfered with by the State"); *see also Crawford v. Sch. Bd. for Richmond City*, No. 3:20cv923, 2021 U.S. Dist. LEXIS 90803, at *9-10 (E.D. Va. May 12, 2021) (explaining the need to establish a "constitutionally protected liberty or property interest" in order to proceed with a due process claim under the Fourteenth Amendment).

280 (4th Cir. 2018); *Knox v. Plowden*, 724 F. App'x 263 (4th Cir. 2018); *Mitchell v. Unknown*, 730 F. App'x 171 (4th Cir. 2018)) (recommending the dismissal of a *pro se* action under 28 U.S.C. § 1915 with prejudice after the plaintiff, despite receiving an opportunity to amend, failed to state a claim upon which relief could be granted), *adopted by*, 2019 U.S. Dist. LEXIS 33852 (D.S.C. Mar. 4, 2019); *see Gooden v. U.S. Navy/U.S. Marine Corps*, 791 F. App'x 411, 411 (4th Cir. 2020) (affirming the district court's dismissal of a *pro se* action with prejudice pursuant to 28 U.S.C. § 1915(e)(2)).

Here, the Court has already provided Plaintiff with an opportunity to amend his initial Complaint in this action. However, Plaintiff's Amended Complaint, like his initial Complaint, does not adequately state a claim on which relief may be granted. Thus, this action will be DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

## IV. CONCLUSION

For the reasons set forth above, this action will be DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

An appropriate Order shall issue.

It is so ORDERED.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Richmond, Virginia
June 11, 2021